# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4171

_____

| | | |
|---|---|---|
| International Association of | * | |
| Firefighters, Local No. 3808; | * | |
| John Tvedten, | * | |
| | * | |
| Appellees, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| City of Kansas City, a Municipal | * | |
| Corporation; Robert L. Collins, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: June 12, 2000
Filed: August 8, 2000

_____

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
PANNER,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Local 3808 of the International Association of Firefighters and its president, John Tvedten, (collectively "the union") brought suit against the City of Kansas City and its city manager, Robert L. Collins, (collectively "Kansas City"). The union claims that

_____

[1]The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

Kansas City has unconstitutionally infringed the union members' First Amendment freedom of association. The union represents management-level employees of the Kansas City Fire Department. A different Local, number 42, also affiliated with the International Association of Firefighters, represents rank and file firefighters in Kansas City. Kansas City, pursuant to its Ordinance No. 46749, sought to prohibit the members of Local 3808 from organizing in a union affiliated with a national organization that is also affiliated with Local 42.

The District Court,[2] on the union's motion for summary judgment, granted the union's request for a declaratory judgment that Ordinance No. 46749 was unconstitutional as applied. The District Court also entered a permanent injunction barring continued enforcement of the ordinance "insofar as it has been applied to prohibit supervisory employees of the Kansas City Fire Department from joining, maintaining membership in, or engaging in the activities of IAFF Local 3808 and insofar as it has been applied to support the refusal of the defendants to meet and confer with members of Local 3808." Officers' Local No. 3808 v. City of Kansas City, Mo., No. 98-0797-CV-W-BC, at 1-2 (W.D. Mo. Oct. 19, 1999).

Kansas City appeals, and we affirm.

I.

The relevant facts are uncontroverted. Prior to 1976, all firefighters employed by Kansas City, except the Fire Chief, were members of Local 42. Between 1966 and 1975, Local 42 engaged in several job actions, ultimately including an illegal strike in October 1975. This strike effectively left Kansas City without fire protection. Local

---

[2]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c) (1994).

42 and Kansas City settled their differences and entered into a memorandum of understanding whereby the firefighters received additional pay, but certain supervisory-level employees were prohibited from belonging to the same labor organization as the employees they supervised. In July 1976, Kansas City adopted Ordinance No. 46749 to implement the agreement with Local 42.

The relevant text of the Ordinance reads as follows:

> Any supervisor, as defined in this section, is forbidden to join or maintain membership or engage in activities of any labor organization which admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, nonsupervisory employees who work under the direction of such supervisors, or otherwise are engaged in the type of work performed by such nonsupervisory employees.

Kansas City, Mo., Code of Ordinances § 2-1072(C).

After the passage of the Ordinance, Local 42 and its then-president, John Germann, brought suit against Kansas City, claiming that the Ordinance was unconstitutional because it prohibited supervisory employees from joining the same union as rank and file employees. The Missouri Court of Appeals held that the Ordinance was constitutional as applied. See Germann v. City of Kansas City, 577 S.W.2d 54, 56 (Mo. Ct. App. 1978). The court reasoned that if supervisory-level firefighters were members of the same union as the rank and file, then the supervisors would face an "irreconcilable conflict of interest" by virtue of their competing duties to the fire department and their union cohorts. Id.

Shortly thereafter, the supervisory firefighters formed an organization called the Chief Officers Association. The Association acted somewhat like a labor union, as it attempted to protect the common interests of its members by addressing concerns to the Fire Chief and the City Manager. Kansas City officials met with representatives of

-3-

the Association to discuss such matters as pay, working conditions, and fire department operations, but the Association was not recognized as an official "meet and confer" representative of its members.

Some supervisory firefighters grew dissatisfied with the Association's progress in meeting its intended goals. In 1997, the supervisory firefighters formed a labor organization for the purpose, among other things, of meeting and conferring with Kansas City officials about terms and conditions of employment. The organization applied for and obtained a temporary charter from the International Association of Firefighters. The organization began operating under the name Officers' Local No. 3808 and ultimately received a permanent charter from the International in February 1988.

In late 1997, Tvedten, on behalf of Local 3808, wrote to City Manager Collins and requested that a "meet and confer" session between Local 3808 and city officials begin in 1998, with the goal of formulating mutually agreeable terms and conditions of employment for the members of Local 3808. Collins replied that Ordinance No. 46749 prohibited the formation of Local 3808 because it was affiliated with the same international as Local 42, and in light of the Ordinance, "the City must decline to enter into meet and confer sessions" with those supervisory employees of Local 3808 as long as they supervise firefighters who are members of the same international. Letter from Robert L. Collins, City Manager, to John Tvedten, Battalion Chief 1 (Dec. 1, 1997).

The union filed suit, and the District Court concluded that the Ordinance was unconstitutional as applied. After noting that the right of association includes private and public employees' union membership, the District Court, relying on Cousins v. Wigoda, 419 U.S. 477 (1975), and Shelton v. Tucker, 364 U.S. 479 (1960), applied a three-part test to determine whether Kansas City's infringement of that freedom was permissible. First, the District Court asked whether Kansas City had articulated a sufficiently important state interest. It concluded that the government's interest in the

efficient and effective functioning of the fire department was such an interest. Second, the District Court inquired whether the interest was served by the Ordinance and concluded it was not. Third, the District Court questioned whether the ordinance was the least restrictive means of furthering the governmental interest. The District Court, reasoning that the Ordinance restricted more associational activity than necessary, decided that the Ordinance, as applied, was not the least restrictive means available to serve the city's interest.

## II.

We review de novo. The union is entitled to summary judgment if there is no genuine dispute of material fact and the undisputed facts establish its entitlement to judgment as a matter of law. See Cuffley v. Mickes, 208 F.3d 702, 705 (8th Cir. 2000).

## A.

We begin by identifying the proper legal standard for determining whether Kansas City's action is permissible. The First Amendment freedom of association, applied to the states by the Fourteenth Amendment, provides Tvedten and other union members with a constitutionally protected right to organize a labor union, even though they are public employees. See Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 464-66 (1979) (per curiam). But the freedom to associate, like others, is not absolute. See Buckley v. Valeo, 424 U.S. 1, 25 (1976) (per curiam). It is settled law that when the government deals with its employees in its role as employer, it has broader latitude in First Amendment matters than when it deals with its citizens in its role as a sovereign. See, e.g., Board of Comm'rs, Wabaunsee County v. Umbehr, 518 U.S. 668, 674-76 (1996). Determining when and how a public employer can limit its employees' freedom to associate is the central difficulty in this case.

-5-

We disagree with the union's argument that the strictest First Amendment scrutiny is applicable because to accept that argument would ignore the distinction between Kansas City's role as a sovereign and the government's role as an employer. We believe an intermediate level of scrutiny is appropriate, and that the proper question is whether the government's determination that the union members must not associate with the International Association of Firefighters is reasonable. The Supreme Court has applied this test to a highly analogous situation also involving associational rights, namely where the government has conditioned work on the basis of political affiliation. See O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S 712, 719 (1996); see also Branti v. Finkel, 445 U.S 507, 518 (1980) ("[T]he question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."). The government must demonstrate more than that its policy is merely rational because important First Amendment rights are at stake, but the government is not held to the exacting level of proof required in other First Amendment contexts. Cf. Nixon v. Shrink Missouri Government PAC, 120 S. Ct. 897, 904 & n.3 (2000) (articulating intermediate scrutiny standard applicable in reviewing campaign contribution limits and contrasting traditional strict scrutiny standard).

Further, a case-by-case reasonableness analysis effectively serves the purposes of the balancing test employed in another analogous area, i.e., where a government employee claims to have been discharged in retaliation for protected First Amendment expression. See O'Hare Truck, 518 U.S. at 719 (discussing the balancing test of Pickering v. Board of Education, 391 U.S. 563 (1968)). The Pickering balance requires that the court consider the government's interest in efficiently and effectively providing public services, as well as the employee's interest in First Amendment expression. See, e.g., Barnard v. Jackson County, Mo., 43 F.3d 1218, 1223-24 (8th Cir. 1995). These same considerations should inform the analysis of whether a government's infringement of its employees' associational rights is reasonable. Cf. Brown v. Polk County, Iowa, 61 F.3d 650, 658 (8th Cir. 1995) (en banc) (applying

principles of <u>Pickering</u> to public employee's First Amendment free exercise claim), <u>cert. denied</u>, 516 U.S. 1158 (1996). Indeed, the Supreme Court has recently noted the close relationship between the <u>Pickering</u> balancing test and the reasonableness inquiry in political patronage cases. <u>See</u> <u>O'Hare Truck</u>, 518 U.S. at 719.

Finally, this intermediate standard is consistent with our analysis of factually similar cases. We upheld a school district's decision to not renew a school principal's employment contract because he had served as the lead negotiator for the local teachers' union. <u>See Norbeck v. Davenport Community Sch. Dist.</u>, 545 F.2d 63 (8th Cir. 1976), <u>cert.denied</u>, 431 U.S. 917 (1977). The principal brought suit, claiming that the nonrenewal of his contract was retaliation for his exercise of First Amendment associational rights. After noting that the school board had an interest in promoting the efficiency of public services, we concluded that this interest was sufficiently weighty to justify Norbeck's nonrenewal. <u>See</u> <u>id.</u> at 67-68. Specifically, we relied on the fact that Norbeck's dual role as principal and union negotiator created a conflict of interest because he was acting as negotiator for the very teachers he was charged with supervising. Thus, the conflict of interest could both interfere with Norbeck's important relationships with his superiors and impair Norbeck's ability to effectively manage the teachers who worked for him. <u>See</u> <u>id.</u> We also noted that the school board's act was not "overly broad, as it did not prohibit Norbeck from joining any union, particularly one of his peers." <u>Id.</u> at 68.

Similarly, when a teacher claimed she was fired for union organizing, we recognized the First Amendment protected her right to engage in union activity. <u>See</u> <u>Roberts v. Van Buren Public Schls.</u>, 773 F.2d 949, 957 (8th Cir. 1985). However, we also noted that "an associational right must be balanced against, and may be overridden by, the government's interest as an employer in efficiency." <u>Id</u>. Ultimately, however, <u>Roberts</u> presented a factual question of whether the teacher had been fired because of her union activity or because of performance problems. <u>See</u> <u>id.</u> at 958.

Thus, to summarize, our cases consistently recognize that the government, when acting in its role as employer, may interfere with its employees' associational rights, but only if the government action serves a sufficiently important government interest. When the government determines that its interests in the efficient and effective provision of public services require infringement of its employees' associational rights, we cannot simply defer to the government's decision. We must examine its justification and, considering the competing interests of the employees and the government, determine whether the government's determination is reasonable.

B.

With this framework in mind, we turn to the case at bar. The interests asserted by the union members are purely associational. Kansas City has not alleged that any member of Local 3808 has, in relation to union organizing or other union activity, engaged in disruptive expressive activity. For example, Kansas City does not allege that in organizing Local 3808, management-level firefighters have said or done anything that has interfered with working relationships between rank-and-file firefighters, supervisory firefighters, and city officers. To the contrary, Kansas City's actions are based only on the fact of union membership and the consequences Kansas City fears will flow from that fact. Thus, what we must decide is whether Kansas City has infringed the First Amendment rights of its employees, and, if so, whether Kansas City's policy is reasonable.[3]

---

[3]Where workplace expression is at issue, we apply the multi-part Pickering balancing test. See, e.g., Germann v. City of Kansas City, 776 F.2d 761, 763 (8th Cir. 1985), cert. denied, 479 U.S. 813 (1986). Germann, a union president, indeed, the then-president of Local 42, alleged that he was not promoted in retaliation for protected First Amendment activities. In essence, we held that the subject of his expressive and associational First Amendment activity was protected, but the inappropriate manner, form, and tone of his expression justified his nonpromotion. See id. at 765. Here, as in Novak and Roberts, we do not apply the multi-part Pickering balancing test to claims

Kansas City all but concedes that the Ordinance, as applied, infringes upon the union members' associational rights. On this point, Kansas City only argues that the union members have no associational rights in union membership because they are management-level employees. This argument, however, is not supported by authority. Moreover, Norbeck stands to the contrary, for its holding, that a management-level employee's associational interests in a union position may be overborne by sufficiently weighty government interests, implicitly recognizes that even management-level employees have First Amendment associational rights in union membership. See Norbeck, 545 F.2d at 68.

We therefore must determine whether the infringement is reasonable. Kansas City asserts that management-level firefighter membership in Local 3808 may leave the city without fire protection in the event of an illegal job action by Local 42 because members of Local 3808 may sympathize with the members of Local 42 and join in any job action. Kansas City's interest in effective fire protection is undoubtedly substantial. Nevertheless, we conclude that, based on the record, Kansas City has not demonstrated that the application of the Ordinance to the members of Local 3808 will serve that interest to the extent necessary to outweigh a significant interference with the union members' associational rights. Thus, based on the uncontested facts before us, we conclude that the application of the Ordinance is unreasonable and cannot stand.

Ultimately, Kansas City has no proof that the fact that Locals 42 and 3808 are both affiliated with the International Association of Firefighters will influence the members of Local 3808 to strike in sympathy with Local 42 or otherwise interfere with their management duties. Kansas City relies upon the fact that all the members of Local 3808 were once members of Local 42. But this proves too much. As the District Court pointed out, if the management-level firefighters are inclined to support Local 42 in a strike, they would be similarly inclined regardless of their membership in Local

involving only the freedom of association.

-9-

3808. There is simply no evidence that the firefighters' membership in Local 3808 significantly changes the equation. Indeed, the District Court found as an uncontroverted fact that Locals 42 and 3808 are autonomous and independent and that Local 42 does not control the policies or members of Local 3808. Kansas City does not suggest that there is a genuine dispute as to these facts.

Moreover, the record reflects that even Kansas City expects members of Local 3808 to put their management responsibilities above any sympathy for Local 42. Indeed, when representatives of Local 42 were bargaining with Kansas City over terms and conditions of their employment, Kansas City appointed members of Local 3808 to represent the city across the table from the Local 42 representatives. In addition, John Tvedten stated by affidavit that since the organization of Local 3808 he has acted against the interests of Local 42 members because his management duties required it. For example, he required firefighters to submit to "for cause" drug or alcohol testing, which could lead to their termination.

Thus, Kansas City may reasonably fear that Local 42 may undertake some illegal job action and may also fear that management-level firefighters may join in such a job action. But nothing in the record supports the contention that prohibiting management-level employees from organizing in a union affiliated with the International Association of Firefighters will lessen the risk of this occurrence in any more than a de minimis way. Absent some evidence that the locals' affiliations with the international would interfere with the management-level firefighters' duties, we conclude that Kansas City has not met its burden of demonstrating that its infringement of the associational rights of the union members is reasonable.

The District Court also relied upon another ground, namely that the Ordinance's application was overly broad. Because we agree with the District Court's determination that the application of the Ordinance does not serve the interest asserted by Kansas

City, and because we conclude this flaw makes the application of the Ordinance unreasonable, we need not reach the District Court's alternative ground.

## III.

For the above reasons, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.