FRATERNAL ORDER OF POLICE, LODGE NO. 8, AND ROSS STEBBINS, APPELLANTS, v. COUNTY OF DOUGLAS, STATE OF NEBRASKA, APPELLEE.

699 N.W.2d 820

Filed July 8, 2005. No. S-04-611.

John E. Corrigan and Andrew M. Steinbaugh, of Fahey & Corrigan, P.C., for appellants.

Stuart J. Dornan, Douglas County Attorney, and James R. Thibodeau for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Fraternal Order of Police, Lodge No. 8 (Union), represents employees of the Douglas County Department of Corrections (Department). The Union and its president, Ross Stebbins, brought this action against Douglas County (County) seeking declaratory and injunctive relief after management of the Department directed that employees must use vacation time to meet with members of the Douglas County Board of Commissioners (Board). The district court granted the County's motion for summary judgment, and the Union and Stebbins appeal.

## SCOPE OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Dworak v. Farmers Ins. Exch.*, 269 Neb. 386, 693 N.W.2d 522 (2005).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Allied Mut. Ins. Co. v. City of Lincoln*, 269 Neb. 631, 694 N.W.2d 832 (2005).

## FACTS

The County operates and maintains the Douglas County Correctional Center through the Department. The Union is a labor organization existing under the laws of the State of Nebraska and

is recognized as the exclusive collective bargaining representative for certain employees of the Department. All employees holding the position of "Corrections Officer" are covered by the collective bargaining agreement between the Union and the County. At all times relevant to this case, Stebbins was employed as a Corrections Officer III, commonly referred to as a "Sergeant."

The agreement at issue here encompassed wages, hours, and terms and conditions of employment. It covered the term of July 1, 2001, to June 30, 2003, and had been in effect without material changes to the relevant language for at least 10 years. Article VII, § 4, of the agreement provided in part:

> The president and two of his appointed union members may be excused to attend regular and emergency meetings, as well as State and National [Fraternal Order of Police] meetings, and suffer no loss of pay provided that they are excused only for the actual time of the meeting, and that no overtime hours will be incurred by the necessity of someone needing to cover the respective officer's shift and/or absence for said meeting.

In the Union and Stebbins' petition, they alleged that pursuant to the longstanding practice of the parties and their common usage of the agreement's language, the president of the Union and other Union officers had been excused from work without loss of pay to attend meetings of the Board (the governing body of Douglas County) or to meet with individual county commissioners. This practice had generally been referred to as "taking F.O.P. time." The Union president and other Union officers were required to fill out a form which indicated that the requested time off was to be used for Union purposes. Based on the language of the agreement, the request was either approved or denied.

On January 28, 2003, the Union held an emergency meeting for the purpose of directing the Union's executive board to seek relief from the Board for alleged repeated contractual violations by the Department's administration. The next day, a member of the Department's administrative management issued a memorandum stating: "**Effective immediately:** No union employee will be allowed to have any time off to meet with any County Commissioner during work time unless there is an available vacation slot and the employee use[s his or her] vacation time.

If you have any question[s,] please feel free to contact me." Stebbins submitted a request for leave to attend a Board meeting scheduled for February 4, and the request was denied.

On January 31, 2003, the Union and Stebbins filed a petition for declaratory and injunctive relief. They asserted that issuance of the memorandum violated the collective bargaining agreement; the Union president's right to freedom of speech, in violation of article I, § 5, of the Nebraska Constitution; the right of the Union to freedom of association, in violation of article I, § 19, of the Nebraska Constitution; and the right of the Union to freedom of speech and association, as guaranteed by the 1st and 14th Amendments to the U.S. Constitution, in violation of 42 U.S.C. § 1983 (2000). The Union and Stebbins sought temporary and permanent injunctions, compensatory and punitive damages, and attorney fees.

The County denied the Union and Stebbins' allegations and asserted that the district court lacked subject matter jurisdiction. It claimed that the Douglas County Civil Service Commission had original jurisdiction over any action requiring interpretation of the collective bargaining agreement and that the district court had only appellate jurisdiction.

The district court granted the County's motion for summary judgment regarding the freedom of speech and freedom of association claims. The court concluded that it lacked jurisdiction over the collective bargaining agreement because a matter was pending before the Douglas County Civil Service Commission based on the same set of facts.

As to the claims related to freedom of speech, the district court concluded that the alleged basis for the change in policy —the Union's emergency meeting and other disputes within the facility—was not a matter of public concern that was protected speech. The court found that the policy complained of was a workplace personnel policy implemented by the Department's management and was intended to increase the security of the facility and reduce the amount of unnecessary overtime expense for the County. The policy did not prohibit employees from communicating with county commissioners in writing, using their vacation time to meet with commissioners, or meeting with commissioners at a time that was not the employee's scheduled worktime.

The district court found that the policy was not made in retaliation for actions by the Union. The County had articulated nondiscriminatory reasons for the adverse employment action—to increase the security of the facility and reduce the amount of unnecessary overtime expense.

## ASSIGNMENTS OF ERROR

The Union and Stebbins assign the following errors: The district court erred (1) in sustaining the County's motion for summary judgment and dismissing their petition; (2) in concluding that the Union and Stebbins failed to demonstrate that they had engaged in conduct protected by the First Amendment Free Speech Clause; and (3) in concluding that the County's conduct in issuing the January 29, 2003, memorandum was not sufficient to state a claim for retaliation on the basis of freedom of association.

## ANALYSIS

### FREEDOM OF SPEECH

The Union and Stebbins assert that the district court erred in concluding that the Union and Stebbins had failed to demonstrate that they had engaged in conduct protected by the First Amendment Free Speech Clause. The court concluded that the Department's policy was not a matter of public concern that was protected speech, and it granted the County's motion for summary judgment as to this issue.

The U.S. Supreme Court has noted that the core value of the Free Speech Clause of the First Amendment is the public interest in having free and unhindered debate on matters of public importance. See *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). It has been settled that "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). See, also, *Cox v. Civil Serv. Comm. of Douglas Cty.*, 259 Neb. 1013, 614 N.W.2d 273 (2000).

The consideration of a claim by a public employee that the employee's rights have been violated by an adverse employment

decision involves a three-step analysis. *Roberts v. Van Buren Public Schools*, 773 F.2d 949 (8th Cir. 1985).

> First, plaintiffs must demonstrate that their conduct was protected; second, plaintiffs must demonstrate that such protected conduct was a substantial or motivating factor in the adverse employment decision; and third, the employer may show that the employment action would have been taken even in the absence of the protected conduct.

*Id.* at 953-54, citing *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).

Under *Connick v. Myers, supra*, the identification of protected conduct is a two-step process. *Roberts v. Van Buren Public Schools, supra.* "As a threshold matter, the speech must have addressed a 'matter of public concern' . . . then, the interest of the employee in so speaking must be balanced against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " (Citations omitted.) *Id.* at 954. "The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. at 148 n.7.

The content, form, and context of a given statement must be considered in determining whether an employee's speech addresses a matter of public concern. *Id.* " 'To fall within the realm of "public concern," an employee's speech must relate to a "matter of political, social, or other concern to the community." ' " *Cox v. Civil Serv. Comm. of Douglas Cty.*, 259 Neb. at 1025, 614 N.W.2d at 284, quoting *Morris v. Crow*, 117 F.3d 449 (11th Cir. 1997). "The public concern test functions to prevent every employee's grievance from becoming a constitutional case and to protect a public employee's right as a citizen to speak on issues of concern to the community." *Cox v. Civil Serv. Comm. of Douglas Cty.*, 259 Neb. at 1025-26, 614 N.W.2d at 284, citing *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers*, 461 U.S. at 146.

In addressing a First Amendment issue, the court must first determine whether the activity in question is a matter of public concern. See *Cox v. Civil Serv. Comm. of Douglas Cty., supra.* If the activity does not involve a matter of public concern, then the First Amendment is not implicated and the inquiry as to this issue is therefore at an end. *Id.*

In the case at bar, the district court concluded that internal grievances, the expression of personal grievances, or job-related grievances were not generally considered to be matters of public concern and that if an employee's statement did not involve a matter of public concern, the inquiry into whether the Free Speech Clause had been violated was ended. See *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).

We agree with the district court that the matters raised in the petition—the Union's emergency meeting and other disputes within the facility—did not rise to the level of a matter of public concern that was protected speech. A matter of public concern must relate to a political or social issue in the community. A court is not the appropriate forum to review decisions made by a public agency when an employee speaks about personal matters, rather than as a citizen addressing public matters. *Cox v. Civil Serv. Comm. of Douglas Cty.*, 259 Neb. 1013, 614 N.W.2d 273 (2000).

The district court correctly determined as a matter of law that the policy was not a matter of public concern, but, instead, addressed internal job-related grievances. The Union wanted to discuss with the county commissioners alleged violations of the collective bargaining agreement. Remedies for violations of such provisions were found in the agreement's grievance procedures. This topic was not a matter of public concern.

Here, the policy did not limit all communications with the county commissioners, but merely provided that any time spent during a work shift for such communication must be recorded as vacation leave. The policy did not limit the right of Union officers and members to contact county commissioners outside of work hours. The policy was a personnel rule that was designed to increase security at the correctional facility and to reduce overtime costs for the County. Employees remained able to contact county commissioners at times other than during a work shift.

The Union and Stebbins contend that there were material issues of fact concerning the intention of management in issuing the policy. We do not reach this issue because the Union and Stebbins have not demonstrated that their conduct was protected. Whether the Department would pay a Union member for time spent meeting with a county commissioner was not a matter of political, social, or other concern to the public. This was an issue of contractual interpretation of what rights had been bargained for under the agreement between the Union and the County. We cannot say that the policy suppressed the Union's right to participate in public affairs. When the activity does not involve a matter of public concern, the inquiry is ended. See *Cox v. Civil Serv. Comm. of Douglas Cty., supra.*

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Allied Mut. Ins. Co. v. City of Lincoln*, 269 Neb. 631, 694 N.W.2d 832 (2005). Viewing the evidence in the light most favorable to the Union, we find no genuine issue as to any material fact. See *Dworak v. Farmers Ins. Exch.*, 269 Neb. 386, 693 N.W.2d 522 (2005). The County is entitled to judgment as a matter of law on the freedom of speech claim.

### FREEDOM OF ASSOCIATION

The Union and Stebbins contend that the district court erred in concluding that issuance of the January 29, 2003, memorandum was not an adverse employment action sufficient to state a claim for retaliation on the basis of freedom of association.

In *Hudson v. Norris*, 227 F.3d 1047 (8th Cir. 2000), the U.S. Court of Appeals for the Eighth Circuit addressed a claim that state officials had retaliated against an employee for testifying in a lawsuit between a former coworker and the state department of correction.

> To establish a *prima facie* case of unlawful retaliation, an employee must show that he or she participated in a protected activity, that the employer took an adverse employment action against him or her, and that a causal connection existed between the protected activity and the adverse

employment action. . . . Once a *prima facie* case has been made, the burden shifts to the employer to articulate a non-discriminatory reason for the adverse employment action. . . . The employee then has an opportunity to prove that the reason given is pretextual.

(Citations omitted.) *Id.* at 1050-51.

 The Freedom of Association Clause of the First Amendment is not absolute. *International Ass'n v. City of Kansas City*, 220 F.3d 969 (8th Cir. 2000). When the government deals with its employees in its role as employer, it has broader latitude in First Amendment matters than when it deals with its citizens in its role as a sovereign. *Id.* Therefore, an intermediate level of scrutiny is applicable because we are dealing with the government's role as an employer. See *id.*

 Participation in union meetings is a protected activity under the First Amendment's guarantee of freedom of association. See *Roberts v. Van Buren Public Schools*, 773 F.2d 949 (8th Cir. 1985), and cases cited therein. The right of association is similar to the right to free speech in that it must also be "balanced against, and may be overridden by, the government's interest as an employer in efficiency." *Id.* at 957.

The Union and Stebbins allege that the Department's policy was put into place in retaliation for the Union's action in directing its executive board to contact the county commissioners regarding alleged contractual violations by the Department's administration. The district court concluded that the policy in question was not an adverse employment action that produced a material employment disadvantage. Union employees were not prohibited from contacting the county commissioners on their own time or in writing, and the Department had articulated nondiscriminatory reasons for the adverse employment action, i.e., to increase the security of the facility and reduce the expense for unnecessary overtime.

The County is entitled to summary judgment on this issue if there is no genuine dispute of material fact and the undisputed facts establish that it is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all

reasonable inferences deducible from the evidence. *Allied Mut. Ins. Co. v. City of Lincoln, supra.*

In *Spears v. Mo. Dept. of Corr. & Human Resources*, 210 F.3d 850 (8th Cir. 2000), the plaintiff brought a retaliation claim against the department of corrections. The district court granted summary judgment in favor of the department, concluding that the plaintiff had failed to establish any adverse employment action and, thus, had not presented a prima facie case of retaliation. The court of appeals affirmed.

 To establish a prima facie case of retaliation, a plaintiff must show, among other things, that the plaintiff suffered an adverse employment action at the hands of the employer. See *id.* "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Id.* at 853. "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard . . . but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." (Citation omitted.) *Id.*

The policy implementation herein cannot be considered an adverse employment action. It did not produce a material employment disadvantage. The Union's officers were still free to contact the county commissioners while using vacation time. It was not shown that the change in policy significantly affected the Union officers' future career prospects.

The Department's policy did not limit the Union officers' right to associate in order to form or join a union. It merely provided that they could not use worktime to contact county commissioners for Union-related matters. The policy served a sufficiently important government interest. It provided that there would be an ample number of employees on duty in the correctional facility at any one time. It was also an attempt by the Department to establish that its budget would be maintained without excessive overtime costs.

 "The first amendment protects the right of all persons to associate together in groups to further their lawful interests." *Pro. Ass'n of Col. Educ. v. El Paso Cty. Com. Col.*, 730 F.2d 258, 262 (5th Cir. 1984), *cert. denied* 469 U.S. 881, 105 S. Ct. 248, 83

L. Ed. 2d 186. This right includes the right of public employees to join unions and

> the right of their unions to engage in advocacy and to petition government in their behalf. Thus, the first amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do.

*Pro. Ass'n of Col. Educ. v. El Paso Cty. Com. Col.*, 730 F.2d at 262. The rights apply to unions, their members, and their organizers. *Id.*

The Union and Stebbins claimed that the policy limited their right to engage in advocacy because a Union member would not be paid by the Department during the time that the member met with a county commissioner. We disagree. The policy provided that Union employees could not take time during work hours to meet with county commissioners unless the employees used vacation time. This did not limit the Union members' right to advocate for the Union.

Viewing the evidence in the light most favorable to the Union and giving it the benefit of all reasonable inferences deducible from the evidence, we conclude that the Union did not establish a claim for the violation of the right of association as guaranteed by the First Amendment. The policy did not restrict the employees' exercise of their right to associate with other Union members or county commissioners. The district court did not err in granting the County's motion for summary judgment on this claim, and the County was entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed.

AFFIRMED.