CLYDE A. WILLIAMS, APPELLEE, v.
SHEILA BAIRD, APPELLANT.
735 N.W.2d 383

Filed July 13, 2007.    No. S-06-889.

Jon Bruning, Attorney General, and Vicki L. Adams for appellant.

No appearance for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HEAVICAN, C.J.

## I. INTRODUCTION

Clyde A. Williams brought a civil rights action under 42 U.S.C. § 1983 (2000) against the Nebraska Department of Health and Human Services (DHHS) and Sheila Baird, a DHHS employee. Baird motioned for summary judgment, arguing that she was entitled to qualified immunity from suit, but the district court denied Baird's motion. She appealed. The Court of Appeals summarily dismissed her appeal for lack of a final, appealable order.[1] We granted Baird's petition for further review to address whether the denial of a claim of qualified immunity is final for the purpose of immediate appellate review.

## II. FACTUAL BACKGROUND

Baird has been employed as a caseworker for DHHS since 1991. In February 2004, Baird was assigned to investigate

---

[1] *Williams v. Baird*, 15 Neb. App. ___ (No. A-06-889, Sept. 11, 2006).

claims of physical neglect of Williams' three stepdaughters, ages 11, 8, and 6, by their natural mother, Janette Williams, and also physical abuse of those children by their stepfather, Williams. The allegations arose from reports from a teacher at the children's school. On March 2, Baird first interviewed the children, then met with Janette. A deputy with the Howard County sheriff's office was present during these interviews. After interviewing Janette, Baird and the deputy interviewed Williams. During that interview, Williams was defensive and asked whether he needed an attorney.

Based upon statements made by Janette and the children, as well as Williams' defensive attitude during his interview, Baird removed the children from the home shared by Janette and Williams. At that time, Williams was also placed under arrest. The reasons for Williams' arrest are not entirely clear from the record; however, during his deposition, Williams testified that he thought he was arrested for viewing pornography on the Internet and for showing the children pornography on the Internet. Williams was released the following day, and no charges were filed against him in connection with the allegations of abuse. However, the safety plan entered into by Janette and Baird required that in order for the children to be returned to Janette, Williams had to move out of the family home. In accordance with this plan, Janette obtained a protection order against Williams.

Though Janette later retracted her statements, in the affidavit to obtain the protection order, she stated that she did not want Williams to have contact with the children due to several recent "red flags," including allegations that Williams had yelled at the children and spanked the children. Janette also noted that the children had admitted to DHHS they were afraid of Williams and that there was evidence that Williams had been viewing pornography on the family computer. Finally, Janette indicated in the affidavit that she suspected sexual abuse of both the 11-year-old and 6-year-old, though she does not explicitly accuse Williams of that abuse. Approximately 2 months after the issuance of the protection order, Janette had the order withdrawn. Williams returned to the home in late April 2004.

Williams then brought this action against DHHS and Baird under 42 U.S.C. § 1983. Williams generally alleged violations of his rights under the 4th and 14th Amendments to the U.S. Constitution and article I, §§ 3 and 5, of the Nebraska Constitution. Williams also alleged he was denied the quiet use and enjoyment of his home, property, and effects without due process of law under both the U.S. and the Nebraska Constitutions. In their answers, DHHS and Baird asserted several affirmative defenses, including a claim that Baird was entitled to qualified immunity.

Eventually, Williams voluntarily dismissed his action against DHHS, leaving the action pending against Baird. Baird filed a motion for summary judgment, arguing that she was entitled to qualified immunity. The district court denied Baird's claim of qualified immunity, noting that there were genuine issues of material facts, "including whether any reasonable person could believe in good faith that there was probable cause to arrest [Williams] or on an objective basis, whether officers of reasonable competence could disagree whether or not probable cause existed to arrest [Williams]." Baird appealed. The Nebraska Court of Appeals dismissed her appeal on its own motion, concluding that the denial of a motion for summary judgment was not a final order.[2] We granted Baird's petition for further review.

### III. ASSIGNMENTS OF ERROR

Baird assigns that the district court erred in (1) implicitly finding that Williams had a clearly established right to be free from illegal seizures within the context of this case, (2) finding there was a genuine issue of material fact regarding whether there was probable cause to arrest Williams, and (3) failing to find that Williams failed to establish a violation of the right to familial integrity.

As an initial matter, this court is presented with the question of whether this case presents a final, appealable order under our final order jurisprudence or, alternatively, is reviewable under our collateral order doctrine.

---

[2] *Williams v. Baird, supra* note 1.

## IV. STANDARD OF REVIEW

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[3]

## V. ANALYSIS

### 1. FINAL ORDER UNDER NEB. REV. STAT. § 25-1902

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[4] For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.[5]

■ An order is final for purposes of appeal if it affects a substantial right and (1) determines the action and prevents a judgment, (2) is made during a special proceeding, or (3) is made on summary application in an action after judgment is rendered.[6] We note that the order denying Baird's motion for summary judgment did not determine the action or prevent a judgment, as the denial allowed Williams' action against Baird to proceed. In addition, the order was not made on summary application in an action after judgment was rendered. The initial question presented in this case is whether the district court's order was made during a special proceeding.

■ A special proceeding includes every special statutory remedy which is not in itself an action.[7] A judgment rendered by the district court that is merely a step or proceeding within the overall action is not a special proceeding.[8] Generally, a "special proceeding" entails civil statutory remedies not

---

[3] *Pfeil v. State, ante* p. 12, 727 N.W.2d 214 (2007).

[4] *Id.*

[5] *Id.*

[6] *Id.* See, also, Neb. Rev. Stat. § 25-1902 (Reissue 1995).

[7] *Pfeil v. State, supra* note 3.

[8] *Id.*

encompassed in chapter 25 of the Nebraska Revised Statutes.[9] Examples of special proceedings include juvenile court proceedings,[10] probate actions,[11] and workers' compensation cases.[12]

In Baird's petition for further review, she contends first that the nature of her qualified immunity means that "the use of the motion for summary judgment for asserting qualified immunity essentially initiates a 'special proceeding' in the federal courts."[13] Baird also contends this court has previously held in *Currie v. Chief School Bus Serv.*[14] that the summary judgment process can be a special proceeding.

In *Currie*, this court noted that "the fact that the summary judgment process is encompassed in chapter 25 . . . does not preclude this court from finding the summary judgment process to be a special proceeding."[15] However, we later distinguished *Currie* and concluded that situations involving partial motions for summary judgment were not special proceedings.[16]

It has been the repeated conclusion of this court that the denial of a motion for summary judgment is not a final order for purposes of § 25-1902.[17] Moreover, in considering the summary judgment process in light of the definition of a special proceeding, it becomes obvious that a summary judgment proceeding is not itself an action, but, rather, is merely a step in the

---

[9] *Id.*

[10] *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000).

[11] *In re Estate of Peters*, 259 Neb. 154, 609 N.W.2d 23 (2000).

[12] *Thompson v. Kiewit Constr. Co.*, 258 Neb. 323, 603 N.W.2d 368 (1999).

[13] Brief for appellant in support of petition for further review at 7.

[14] *Currie v. Chief School Bus Serv.*, 250 Neb. 872, 553 N.W.2d 469 (1996).

[15] *Id.* at 880, 553 N.W.2d at 475.

[16] *O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998). See, also, *Cerny v. Longley*, 266 Neb. 26, 661 N.W.2d 696 (2003); *Keef v. State*, 262 Neb. 622, 634 N.W.2d 751 (2001).

[17] See, *Big River Constr. Co. v. L & H Properties*, 268 Neb. 207, 681 N.W.2d 751 (2004); *Gruenewald v. Waara*, 229 Neb. 619, 428 N.W.2d 210 (1988); *Rehn v. Bingaman*, 157 Neb. 467, 59 N.W.2d 614 (1953).

overall action. As such, a summary judgment proceeding is not a special proceeding.

As the district court's order was not made in a special proceeding, we are not presented with a final order under § 25-1902.

### 2. COLLATERAL ORDER DOCTRINE

■ Generally, in the absence of a final order from which an appeal may be taken, the appeal must be dismissed for lack of jurisdiction.[18] However, we must determine whether the collateral order doctrine might operate to vest this court with the jurisdiction to decide this appeal.

■ This court most recently explained the collateral order doctrine in *Hallie Mgmt. Co. v. Perry.*[19] In that case, we noted that this court had previously adopted the collateral order doctrine,[20] an exception to the final order rule which was announced by the U.S. Supreme Court in *Cohen v. Beneficial Loan Corp.*[21] We noted with approval the U.S. Supreme Court's pronouncement of the doctrine and held that for an order to fall within the doctrine, it must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.[22]

We noted also in *Hallie Mgmt. Co.* that the U.S. Supreme Court had emphasized the modest scope of the collateral order doctrine, explaining that

"the 'narrow' exception should stay that way and never be allowed to swallow the general rule . . . that a party is entitled to a single appeal, to be deferred until final

---

[18] See, *Pfeil v. State, supra* note 3; *Hallie Mgmt. Co. v. Perry,* 272 Neb. 81, 718 N.W.2d 531 (2006); *Richardson v. Griffiths,* 251 Neb. 825, 560 N.W.2d 430 (1997).

[19] *Hallie Mgmt. Co. v. Perry, supra* note 18.

[20] See *Richardson v. Griffiths, supra* note 18.

[21] *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949).

[22] *Hallie Mgmt. Co. v. Perry, supra* note 18.

judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated."[23]

The U.S. Supreme Court has specifically concluded that under the doctrine, the denial of a claim of qualified immunity is appealable, notwithstanding the absence of a final judgment,[24] *if* the denial of immunity turns on a question of law.[25] Various states have similarly concluded that the denial of qualified immunity can be immediately reviewable.[26] The U.S. Supreme Court noted:

> The upshot is that . . . considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of "qualified immunity" matters to cases presenting more abstract issues of law. Considering these "competing considerations," we are persuaded that "[i]mmunity appeals. . . . interfere less with the final judgment rule if they [are] limited to cases presenting neat abstract issues of law."[27]

In *Stella v. Kelley*,[28] the First Circuit Court explained the distinction:

> [O]n the one hand, a district court's pretrial rejection of a proffered qualified immunity defense remains immediately appealable as a collateral order to the extent that it

---

[23] *Id.* at 86, 718 N.W.2d at 535 (quoting *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994)).

[24] *Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

[25] *Johnson v. Jones*, 515 U.S. 304, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995); *Mitchell v. Forsyth, supra* note 24.

[26] See, *Webb v. Haas*, 728 A.2d 1261 (Me. 1999); *Park County v. Cooney*, 845 P.2d 346 (Wyo. 1992); *Carillo v. Rostro*, 114 N.M. 607, 845 P.2d 130 (1992); *Henke v. Superior Court*, 161 Ariz. 96, 775 P.2d 1160 (Ariz. App. 1989). See, also, *Farrell v. Translyvania County Bd. of Educ.*, 175 N.C. App. 689, 625 S.E.2d 128 (2006) (denial of qualified immunity substantial right and reviewable).

[27] *Johnson v. Jones, supra* note 25, 515 U.S. at 317.

[28] *Stella v. Kelley*, 63 F.3d 71, 74 (1st Cir. 1995).

turns on a pure issue of law, notwithstanding the absence of a final judgment. [Citations omitted.] On the other hand, a district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact.

We find this reasoning persuasive and agree with the U.S. Supreme Court that the denial of a claim of qualified immunity, where the issues presented are purely questions of law, should be immediately reviewable under the collateral order doctrine. Thus, as a threshold issue for appellate jurisdiction, we must consider whether the qualified immunity issue in this case presents disputed questions of fact.

Qualified immunity provides a shield from liability for public officials sued under 42 U.S.C. § 1983 in their individual capacity, so long as an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[29] Though potentially available to all public officials, qualified immunity is often invoked by law enforcement[30] and prison officials,[31] as well as social service workers.[32]

Whether an official may prevail in his or her qualified immunity defense depends upon the objective reasonableness of his or her conduct as measured by reference to clearly established law.[33] An official sued under 42 U.S.C. § 1983 bears the burden of demonstrating that in performing the acts complained of, he or she was acting in a discretionary

---

[29] *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999), *disapproved on other grounds, Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004).

[30] *Diaz v. Martinez*, 112 F.3d 1 (1st Cir. 1997); *Newton v. Huffman*, 10 Neb. App. 390, 632 N.W.2d 344 (2001).

[31] *Crow v. Montgomery*, 403 F.3d 598 (8th Cir. 2005); *Martin v. Curry*, 13 Neb. App. 171, 690 N.W.2d 186 (2004).

[32] *Gottlieb v. County of Orange*, 84 F.3d 511 (2d Cir. 1996); *Manzano v. South Dakota Dept. of Social Services*, 60 F.3d 505 (8th Cir. 1995); *Shearer v. Leuenberger, supra* note 29.

[33] *Shearer v. Leuenberger, supra* note 29.

authority.[34] Once this burden is met, the plaintiff bears the burden of proof as to whether the right allegedly violated was "clearly established."[35]

██ Where appropriate, the issues relating to qualified immunity may be determined via a separate trial or evidentiary hearing.[36] In some instances, it might be unclear, based upon the record before a court, whether a defendant is entitled to qualified immunity. In those instances, "[a] hearing would likely clarify the matter. It may be that resolution of the qualified immunity defense . . . depends upon the resolution of disputed fact issues or on a credibility determination. On the other hand, a more developed record might render such a determination unnecessary."[37]

### (a) Appellate Court Conducts Three-Part Inquiry Into Whether Collateral Order Doctrine Applies

██ Thus, in order to determine whether a case presents an order reviewable under the collateral order doctrine, an appellate court engages in a three-part inquiry. First, we determine whether the plaintiff has alleged the violation of a constitutional right.[38] Second, we determine whether that right was clearly established at the time of the alleged violation.[39] Finally, we determine whether the evidence shows that the particular conduct alleged was a violation of the right at stake.[40] The first two inquiries are questions of law; the last could require factual determinations to the extent that evidence is in conflict.[41]

---

[34] *Harbert Intern., Inc. v. James*, 157 F.3d 1271 (11th Cir. 1998).

[35] See, *Sparr v. Ward*, 306 F.3d 589 (8th Cir. 2002); *Conrod v. Davis*, 120 F.3d 92 (8th Cir. 1997).

[36] See, e.g., *Thompson v. Mahre*, 110 F.3d 716 (9th Cir. 1997); *Johnson v. Garraghty*, 57 F. Supp. 2d 321 (E.D. Va. 1999).

[37] *Johnson v. Garraghty, supra* note 36, 57 F. Supp. 2d at 329.

[38] *Shearer v. Leuenberger, supra* note 29.

[39] *Id.*

[40] See, *Stella v. Kelley, supra* note 28; *Shearer v. Leuenberger, supra* note 29.

[41] See *Stella v. Kelley, supra* note 28.

## (b) Williams' Allegations

In Williams' complaint, he generally alleged violations of his rights under the 4th and 14th Amendments to the U.S. Constitution and article 1, §§ 3 and 5, of the Nebraska Constitution. Williams also alleged that he was denied the "quiet use and enjoyment of his property, home, and effects without due process of law" under both the U.S. and the Nebraska Constitutions.

We note that no one appears to contest the fact that Baird was acting in a discretionary function as an employee of DHHS, and in any case, we conclude that Baird was doing so. For the purposes of a qualified immunity analysis, a defendant is acting within his or her discretionary authority when his or her actions were undertaken pursuant to the performance of his or her duties and within the scope of his or her authority.[42] Baird averred in two separate affidavits that she was acting in her capacity as a DHHS caseworker when investigating claims of abuse made against Williams.

### (i) Unreasonable Seizure Under Fourth Amendment

We first address Williams' contention that he was unreasonably seized in violation of his Fourth Amendment rights. In his complaint, Williams alleges facts, and introduces evidence in support of these allegations, suggesting that he was arrested without probable cause due to false and misleading representations made by Baird. We conclude that with respect to this allegation, Williams, while having alleged the violation of a constitutional right, has failed to allege *a legally cognizable claim* for the violation of such a right.[43]

That one cannot be arrested in the absence of probable cause is clearly established.[44] Williams in fact alleges he was arrested without probable cause. However, Williams also alleges he was arrested by law enforcement at Baird's direction. Williams does not contend that Baird arrested him; indeed, she would appear

---

[42] See *Rich v. Dollar*, 841 F.2d 1558 (11th Cir. 1988).

[43] See *Shearer v. Leuenberger, supra* note 29 (Connolly, J., concurring).

[44] See, *Beck v. Ohio*, 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Donovan v. Thames*, 105 F.3d 291 (6th Cir. 1997).

to have no authority to do so,[45] as generally only peace officers have the authority to effect an arrest.[46]

Further, this court has noted on more than one occasion that "probable cause . . . requires that the facts available *to the officer* would cause a reasonably cautious person to believe that the suspect has committed an offense."[47] Therefore, it is inconsequential whether Baird might have directed law enforcement to arrest Williams, as law enforcement would have been required to makes its own assessment of probable cause. There is no indication either from the record or state law that Baird was a member of law enforcement. Given this, we conclude as a matter of law that Williams has failed to state a legally cognizable claim for the violation of a constitutional right. As such, we conclude as to this contention that Baird is entitled to qualified immunity.

### (ii) Familial Integrity

In his second contention, Williams argues that his rights under the U.S. and Nebraska Constitutions to quiet use and enjoyment of his property were violated without due process of law. Williams alleges in his complaint that Baird informed Janette that unless Williams ceased to reside in the family home, Baird would not allow Williams' stepchildren to return to the family home. Relying on these statements, Williams alleges that Janette obtained a protection order against him and that he was barred from his home for approximately 2 months.

Based upon the record presented to us, a fair characterization of the right at issue would be the right to familial integrity, wherein parents and children have a constitutionally protected liberty interest in the care and companionship of one another.[48] This right is clearly established.[49] However, there is a high

---

[45] See Neb. Rev. Stat. §§ 29-404.02 (Reissue 1995) and 49-801(15) (Reissue 2004).

[46] § 29-404.02.

[47] *State v. Eberly*, 271 Neb. 893, 902, 716 N.W.2d 671, 679 (2006) (emphasis supplied, citing *State v. Ball*, 271 Neb. 140, 710 N.W.2d 592 (2006)).

[48] *Manzano v. South Dakota Dept. of Social Services, supra* note 32.

[49] *Id.*

burden upon plaintiffs attempting to establish a violation of the right to familial integrity.[50] The Eight Circuit has repeatedly noted that "when a state official pursuing a child abuse investigation takes an action which would otherwise unconstitutionally disrupt familial integrity, he or she is entitled to qualified immunity, if such action [was] properly founded upon a reasonable suspicion of child abuse."[51]

Based upon the record presented to us, we conclude that certain factual determinations remain unresolved. In particular, we note that factual determinations are necessary in order to decide whether Baird had a reasonable suspicion that Williams was abusing the children. Complicating this matter further is the fact that the district court failed to address in any manner Williams' claim of familial integrity. These unresolved factual determinations prevent us from utilizing the collateral order doctrine to decide whether Baird, in fact, violated the clearly established right alleged by Williams. We note that a hearing on these factual determinations might assist the district court in clarifying Baird's entitlement to qualified immunity on this second claim.

## VI. CONCLUSION

The order of the district court denying Baird's claims of qualified immunity is not a final order under § 25-1902. However, under the collateral order doctrine, we are permitted to review Baird's qualified immunity claim with respect to Williams' first claim. As such, we conclude that Baird is entitled to qualified immunity on that claim, as Williams failed to allege a legally cognizable constitutional claim. We accordingly reverse the district court's denial of Baird's claim of qualified immunity.

Baird's appeal with regard to the second claim is not reviewable under the collateral order doctrine at this time. Baird's appeal on this claim is dismissed.

REVERSED IN PART, AND IN PART DISMISSED.

---

[50] *Thomason v. SCAN Volunteer Services, Inc.*, 85 F.3d 1365 (8th Cir. 1996).

[51] *Manzano v. South Dakota Dept. of Social Services, supra* note 32, 60 F.3d at 511. See, also, *Thomason v. SCAN Volunteer Services, Inc., supra* note 50.