and is therefore vacated. We remand the cause for resentencing by the district court as to Taylor's conviction for a Class IA felony. Taylor's sentence for use of a deadly weapon to commit a felony is affirmed and is to be consecutive to the sentence imposed by the district court on the murder conviction.

Affirmed in part, sentence vacated in part,
and cause remanded for resentencing.

Connolly and McCormack, JJ., participating on briefs.

———————————

Jeanette Carney, appellee, v.
Jacquelyn Miller, appellant.

___ N.W.2d ___

Filed February 14, 2014.    No. S-12-1138.

1. **Jurisdiction: Appeal and Error.** An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law.
2. **Summary Judgment: Immunity: Appeal and Error.** The district court's denial of summary judgment on grounds of qualified immunity is subject to de novo review.
3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.
4. **Final Orders: Appeal and Error.** Generally, only final orders are appealable.
5. ____: ____. Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.
6. **Summary Judgment: Final Orders.** An order denying summary judgment is not a final order under Neb. Rev. Stat. § 25-1902 (Reissue 2008).
7. **Final Orders.** The collateral order doctrine is an exception to the final order rule.
8. **Final Orders: Immunity: Appeal and Error.** Under the collateral order doctrine, the denial of a claim of qualified immunity is appealable, notwithstanding the absence of a final judgment, if the denial of immunity turns on a question of law.
9. ____: ____: ____. The denial of a claim of qualified immunity is immediately reviewable under the collateral order doctrine where the issues presented are purely questions of law.

10. **Civil Rights: Public Officers and Employees: Immunity.** Qualified immunity provides a shield from liability for public officials sued under 42 U.S.C. § 1983 (2006) in their individual capacity, so long as an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

11. **Public Officers and Employees: Immunity.** Whether an official may prevail in his or her qualified immunity defense depends upon the objective reasonableness of his or her conduct as measured by reference to clearly established law.

12. **Trial: Immunity.** Where appropriate, the issues relating to qualified immunity may be determined via a separate trial or evidentiary hearing.

13. **Final Orders: Appeal and Error.** In order to determine whether a case presents an order reviewable under the collateral order doctrine, an appellate court engages in a three-part inquiry: (1) whether the plaintiff has alleged the violation of a constitutional right, (2) whether that right was clearly established at the time of the alleged violation, and (3) whether the evidence shows that the particular conduct alleged was a violation of the right at stake.

14. **Constitutional Law: Public Officers and Employees.** The identification of protected conduct is a two-step process. As a threshold matter, the speech must have addressed a matter of public concern. Then, the interest of the employee in so speaking must be balanced against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

15. **Constitutional Law.** The inquiry into the protected status of speech is one of law.

16. **Constitutional Law: Public Officers and Employees.** The content, form, and context of a given statement must be considered in determining whether an employee's speech addresses a matter of public concern.

17. ____: ____. To fall within the realm of public concern, an employee's speech must relate to a matter of political, social, or other concern to the community.

18. ____: ____. The public concern test functions to prevent every employee's grievance from becoming a constitutional case and to protect a public employee's right as a citizen to speak on issues of concern to the community.

19. ____: ____. When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.

20. ____: ____. First Amendment protection is not lost when a public employee communicates privately with his or her employer rather than choosing to spread his or her views before the public.

21. ____: ____. While a public employee does not give up his or her right to free speech simply because the employee's speech is private, the internal nature of the speech is a factor to be considered.

22. ____: ____. A public employee's speech on matters of purely personal interest or internal office affairs does not constitute a matter of public concern and is not entitled to constitutional protection.

23. ____: ____. The fundamental question in determining whether a public employee is speaking upon matters only of personal interest or upon matters of public

concern is whether the employee is seeking to vindicate personal interests or bring to light a matter of political, social, or other concern to the community.

24. ____: ____. Factors relevant in determining whether an employee's speech undermines the effective functioning of the public employer's enterprise are whether the speech creates disharmony in the workplace, impedes the speaker's ability to perform his or her duties, or impairs working relationships with other employees.

25. **Constitutional Law: Equal Protection: Public Officers and Employees.** A "class of one" equal protection claim is not cognizable in the public employment context.

26. **Constitutional Law: Public Officers and Employees.** A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he or she is doing violates that right.

27. ____: ____. If a reasonable official could have believed his or her conduct was lawful, the official's conduct does not violate clearly established law.

28. ____: ____. It is clearly established that a state may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.

29. **Summary Judgment: Immunity: Appeal and Error.** A defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial.

30. **Immunity: Pretrial Procedure: Appeal and Error.** A district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact.

Appeal from the District Court for Lancaster County: STEVEN D. BURNS, Judge. Reversed in part, and in part dismissed.

Jon Bruning, Attorney General, and John L. Jelkin for appellant.

Elaine A. Waggoner, of Waggoner Law Office, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CASSEL, J.

## I. INTRODUCTION

A nurse formerly employed by the State of Nebraska filed suit against a supervisor who terminated her employment, alleging violations of the 1st and 14th Amendments to the

U.S. Constitution. The supervisor asserted that she was entitled to qualified immunity and moved for summary judgment. The district court denied the motion, and the supervisor seeks an immediate appeal. We conclude that the employee did not establish a viable violation of her 14th Amendment rights and that the supervisor is entitled to qualified immunity on that claim. We reverse the district court's order to the extent that it denied the supervisor qualified immunity on the 14th Amendment claim. Because the employee's alleged First Amendment claim necessitates resolving a fact-related dispute, we conclude that the supervisor's appeal is not immediately reviewable under the collateral order doctrine on this issue and we dismiss the appeal as to this issue.

## II. BACKGROUND

In June 2002, Jeanette Carney began her employment as a "Community Health Nurse III" with Every Woman Matters, a program of the Department of Health and Human Services (DHHS). Her job duties included initiating a Medicaid treatment application upon receipt of documentation of a qualifying diagnosis from a physician, verifying that a potential recipient met the eligibility requirements under the Every Woman Matters policies and protocols, and ensuring that all necessary documentation was obtained before the applications were submitted to Medicaid.

In November 2004, Jacquelyn Miller became a deputy director at DHHS. At all relevant times, Miller was either Carney's second- or third-line supervisor. Melissa Leypoldt was Carney's immediate supervisor from June 2002 until June 20, 2006, and Leypoldt's immediate supervisor was Kathy Ward. Miller was Ward's immediate supervisor.

On several occasions in 2005, Carney informed Miller of issues relating to the Every Woman Matters program. Carney told Miller that certain individuals who had been determined to be eligible for Medicaid were disqualified by Leypoldt. In May, Carney wrote to and spoke with Miller regarding Leypoldt's removal of an individual from Medicaid eligibility during the midst of treatment, which Carney claimed was contrary to law and regulation. In December, she spoke with

Miller about Leypoldt's alleged misapplication of statutes, regulations, and policies.

On February 10, 2006, Leypoldt placed Carney on investigatory suspension with pay. According to the suspension letter, Leypoldt was concerned about Carney's judgment in approving claims for payment of medical expenses. On February 16, Carney filed a grievance regarding the suspension. Following a hearing, the hearing officer ultimately found, among other things, that DHHS had properly applied the provisions of the labor contract with regard to Carney's investigatory suspension and had acted in good faith and not exceeded its authority in suspending Carney.

On March 16, 2006, Carney was served with a "Written Notice of Allegations." The allegations included that Carney failed to consistently follow program protocols for assessing and certifying individuals for Medicaid, that she inappropriately extended eligibility for Medicaid benefits without the proper documentation to make an informed decision, that she used her state e-mail for personal reasons, and that she used her state computer and Internet access for purposes unrelated to her work. Leypoldt noted on the document that "Carney refused to sign stating[,] 'This is retaliation.'"

On May 5, 2006, Carney filed a charge of discrimination with the Nebraska Equal Opportunity Commission (NEOC) alleging retaliation, discrimination based on disability, and whistleblower violations. She claimed that beginning in approximately 2003, she made multiple requests to work from home as an accommodation due to her disability and the disability of her husband. Carney also stated that Leypoldt asked her to violate "Nebraska Code 469," that Carney refused, that Carney reported Leypoldt to Medicaid, and that Carney was "written up" by Leypoldt as a result. Carney further stated that she reported Leypoldt's use of money to Nebraska's Auditor of Public Accounts in March 2006 and reported Leypoldt's overruling of doctors' decisions about cancer treatment to Nebraska's Board of Nursing in approximately April.

On June 19, 2006, a notice of discipline was issued to Carney based on her failure to consistently follow program protocols for assessing and certifying clients for Medicaid under

the Medicaid treatment program, her inappropriately extending eligibility for Medicaid benefits without proper documentation, and her inappropriate use of the worksite computer. The notice of discipline subjected her to a salary reduction and 6 months' probation. Carney filed a grievance. Following a hearing, the hearing officer found that the discipline was not based on just cause and did not represent the application of progressive discipline. The hearing officer allowed the 6-month disciplinary probation and work improvement plan to stand but ordered DHHS to rescind the reduction in pay, return the lost pay to Carney, and substitute the discipline with a suspension of up to 5 days without pay.

On July 10, 2006, Carney filed a third grievance, alleging retaliation, disrespectful treatment, and discrimination. Following a hearing, the hearing officer found that DHHS had not violated the labor contract and had not discriminated against Carney. The hearing officer reasoned that although the majority of employees are allowed to work from home, "it is management's right to approve/disapprove a request to work from home" and that "management has chosen to display close supervision of [Carney] and has denied her request to work at home based on this."

On August 2, 2006, Carney filed a second charge with the NEOC against DHHS alleging retaliation and discrimination based on disability. She amended the charge on January 3, 2007, to add claims of disability by association and failure to accommodate.

On December 26, 2006, Carney submitted an "Application for Work at Home" for the first time. On January 8, 2007, she sent an e-mail to Miller and others complaining that she was being punished and retaliated against. On January 11, Carney sent Ward an e-mail at the end of the day stating: "'Everything I did here today I could have done from anywhere else in the world. Including my home.'" On that same day, a coworker sent Ward an e-mail complaining about difficulty in getting Carney to cover the nurses' voicemail box.

On January 29, 2007, Carney sent Miller an e-mail regarding a client's not being sent an application from the Every Woman Matters program and, as a result, having her wages

garnished to pay for tests which should have been covered by the program. On February 13, Carney sent an e-mail to Miller which began:

> I know that I have shared a number of things with you already that are of a great concern to me regarding how things are managed around here (the Komen grant with [Leypoldt's] taking the $973, the $250,000 overspen[t] by [Leypoldt] in fall of '05, her refusal to let women submit Medicaid applications when their physicians have recommended treatment, the altering of medical records, etc.), but I have another big one. The colon cancer demonstration program.

Carney then stated that she overheard the "'host'" of a conference call with the "CDC" tell Leypoldt that Nebraska had not participated in the last three calls. In another e-mail to Miller on the same date, Carney complained about a misapplication of policy by Leypoldt with regard to women diagnosed with "HPV."

On February 20, 2007, Carney communicated to Miller further alleged breaches of policy application by Leypoldt and Ward. On February 21, Carney's work computer was audited for usage for the period of January 31 through February 21. Results showed that Carney used her state e-mail account and state computer for personal purposes.

On March 12, 2007, Miller denied Carney's December 2006 home office request.

On March 22, 2007, Ward gave Carney a "Written Notice of Allegations." The document stated that Carney's behavior was causing continuous disruption in the workplace, resulting in a failure to maintain appropriate working relationships with coworkers and supervisors. It identified e-mails sent by Carney indicating intent to cause disruption. Another allegation in the document was that Carney was not completing the work assigned to her. The document also alleged that Carney was inappropriately using the state-owned computer and Internet access for purposes not related to state business.

On May 1, 2007, Ward received an e-mail from Carney asking why Carney was not allowed to work at home. Ward

responded that she had concerns about Carney's work performance and was not willing to have her work independently at home.

On July 12, 2007, a coworker reported to Ward that she was helping Carney enter patient data from file drawers assigned to Carney and that some documents dated back to May 23. The timeline standard for data entry was 2 weeks from the date that documents were received.

On July 25, 2007, Carney met with Ward, Miller, and a representative from human resources and was given her "Notice of Discipline — Termination." Miller ultimately made the decision to terminate Carney's employment.

On June 11, 2008, the NEOC found that the evidence was insufficient to support Carney's allegations of discrimination and made determinations of "no reasonable cause" on each of Carney's cases.

On July 18, 2011, Carney filed a lawsuit against Miller in Miller's individual capacity. She filed an amended complaint on October 28. Carney stated that she brought the action to redress her civil rights under (1) the 1st Amendment to the U.S. Constitution, providing protection for free speech; (2) the 14th Amendment, providing for due process and equal protection; (3) 42 U.S.C. § 1983 (2006), providing for redress of deprivation of her civil rights and providing for damages; (4) 42 U.S.C. § 1988 (2006), providing for attorney fees; and (5) the common law of Nebraska, providing for protections from any deprivation of rights. She subsequently moved to dismiss all due process claims and reserved for trial the claims involving First Amendment speech and retaliation and equal protection under the federal and state Constitutions.

Carney alleged that she spoke out on matters of public concern by opposing wrongful cancellation of services to clients and by filing grievances and claims of discrimination. She alleged that she was treated differently than similarly situated employees who had not opposed unlawful activity. Carney alleged that Miller knew at the time of Carney's termination of employment that Carney had been treated differently than other similarly situated employees who had not engaged

in protected speech. Carney claimed that she had been subjected to retaliatory discipline actions because of the protected speech and that other similarly situated employees who had not engaged in protected speech were allowed to work at home, contrary to articulated policies.

Miller filed a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(1) and (6). She alleged that the court lacked subject matter jurisdiction over her because as a state employee, she was entitled to claim qualified immunity. Miller also claimed that the amended complaint failed to state a claim upon which relief could be granted and that some or all of the claims were barred by the statute of limitations. The district court overruled the motion.

Miller subsequently filed a responsive pleading and set forth a number of affirmative defenses. She alleged that her actions were objectively reasonable and that, therefore, as a state employee, she was entitled to the defense of qualified immunity. Miller again alleged that Carney's claims were barred by the statute of limitations. Miller subsequently moved for summary judgment based upon qualified immunity. She claimed that there was no violation of Carney's right of free speech, because Carney spoke as an employee of the State of Nebraska, Carney's speech was related to her employment, and any violation of Carney's right of free speech was not clearly defined so that a reasonable supervisor would know that Carney's rights were being violated.

Carney testified in a deposition that sometime in 2005 and also on February 10, 2006, she formed the opinion that Miller was violating her right of free speech. She testified that she first became aware that Miller had violated her right to equal protection in the spring of 2005 and February 10, 2006.

Evidence adduced during the summary judgment hearing established that Carney claimed Miller violated her constitutional right to free speech by providing advice to Ward and Leypoldt regarding preparation of the "Written Notice of Allegations," imposition of probation, and termination of Carney's employment. Carney asserted that Miller violated her constitutional right to equal protection by, among other things, not allowing her to work from home as other

employees were allowed, consenting to the imposition of the "Written Notice of Allegations" and disciplinary action, consenting to require Carney to produce more documentation than other employees to be able to receive sick-time pay, communicating negative information to human resources to prevent Carney from being able to work at home, and terminating her employment. According to Carney, most employees who had been permitted to work from home did not fill out an application to do so. When asked what Miller did that violated Carney's right to equal protection, Carney answered, "She knew that I had requested reasonable accommodation, she knew that I had felt that I was singled out and treated differently, she knew that I felt that other women were being denied service, and she didn't do anything about it, and that's a violation."

On December 3, 2012, the court entered an order overruling Miller's motion for summary judgment. The court found that numerous material factual disputes existed, which prevented judgment as a matter of law. Specifically, the court stated:

Material questions of fact exist and the inferences to be drawn from the facts presented by the parties, including undisputed facts, are not clear with regard to the following aspects of the case: whether [Carney] engaged in conduct or activity protected by the First Amendment; and whether the protected conduct was a substantial or a motivating factor in [Miller's] participation in adverse employment action against [Carney]. Likewise, whistleblower status has been recognized as a protected class for an equal protection claim arising out of employment. Material questions of fact exist regarding whether [Carney] is a member of a protected class of persons known as whistleblowers; whether [Miller] treated [Carney] differently in an important aspect of her employment as a result of her membership; the nature of the governmental interest and purpose involved; whether under all the circumstances [Miller's] conduct was reasonable; whether [Miller] would have discharged [Carney] regardless of her exercise of her right to free

speech; whether [Carney's] communications with her supervisors cause disharmony or disruption in the workplace; and whether [Carney's] communications with her supervisors impair her ability to perform her duties.

Thus, the court overruled Miller's motion for summary judgment. Miller appealed.

## III. ASSIGNMENTS OF ERROR

Miller assigns that the district court erred when it failed to (1) conduct an appropriate qualified immunity analysis and (2) find that Carney's claims are barred by the statute of limitations.

## IV. STANDARD OF REVIEW

[1] An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law.[1]

[2] The district court's denial of summary judgment on grounds of qualified immunity is subject to de novo review.[2]

## V. ANALYSIS

### 1. Final Order

[3-5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[3] Generally, only final orders are appealable.[4] Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.[5]

---

[1] *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013).

[2] *Sparr v. Ward*, 306 F.3d 589 (8th Cir. 2002).

[3] *Sutton v. Killham*, *supra* note 1.

[4] *Id*.

[5] *Id*.

[6] An order denying summary judgment is not a final order under § 25-1902.[6] Here, the order denying summary judgment did not determine the action or prevent a judgment; instead, it allowed Carney's action against Miller to proceed. Further, a summary judgment motion does not invoke a special proceeding.[7] Instead, a summary judgment proceeding is a step in the overall action.[8] And as a step in an action, a motion for summary judgment is not a summary application made in an action after a judgment is rendered.[9] Accordingly, the order in this case which denied Miller's motion for summary judgment is not a final order.

## 2. Collateral Order Doctrine

[7-9] The collateral order doctrine is an exception to the final order rule.[10] Under the doctrine, the denial of a claim of qualified immunity is appealable, notwithstanding the absence of a final judgment, if the denial of immunity turns on a question of law.[11] We have emphasized that the denial of a claim of qualified immunity is immediately reviewable under the collateral order doctrine where the issues presented are purely questions of law.[12]

[10-12] Qualified immunity provides a shield from liability for public officials sued under § 1983 in their individual capacity, so long as an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[13] Whether an official may prevail in his or her qualified immunity defense depends upon the objective reasonableness of his or her conduct as measured by reference to clearly established law.[14] Where

---

[6] See *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 733 N.W.2d 877 (2007).

[7] *Big John's Billiards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

[8] *Id.*

[9] *Id.*

[10] See *Williams v. Baird*, 273 Neb. 977, 735 N.W.2d 383 (2007).

[11] *Id.*

[12] See *id.*

[13] *Id.*

[14] *Id.*

appropriate, the issues relating to qualified immunity may be determined via a separate trial or evidentiary hearing.[15]

[13] In order to determine whether a case presents an order reviewable under the collateral order doctrine, an appellate court engages in a three-part inquiry.[16] First, we determine whether the plaintiff has alleged the violation of a constitutional right.[17] Second, we determine whether that right was clearly established at the time of the alleged violation.[18] Finally, we determine whether the evidence shows that the particular conduct alleged was a violation of the right at stake.[19] The first two inquiries are questions of law; the last could require factual determinations to the extent that evidence is in conflict.[20]

### (a) Carney's Allegations

We first consider whether Carney alleged a viable violation of a constitutional right. In Carney's complaint, she asserted violations of her 1st Amendment right to freedom of speech and her 14th Amendment right to equal protection under the law. She claimed that she spoke out on matters of public concern by opposing wrongful cancellation of services to clients and by filing grievances and claims of discrimination, that she was treated differently than similarly situated employees who had not opposed unlawful activity, and that Miller acted intentionally to deprive Carney of her rights to equal protection while engaging in protected speech. Carney further claimed that she had been subjected to retaliatory disciplinary actions because of protected speech, that other similarly situated employees who had not engaged in protected speech were allowed to work at home contrary to articulated policies, and that Miller willingly participated in the unlawful

---

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id*.

[19] *Id*.

[20] *Id*.

termination of Carney's employment despite knowing that the termination was a violation of equal protection.

### (i) First Amendment

[14] The identification of protected conduct is a two-step process. As a threshold matter, the speech must have addressed a matter of public concern. Then, the interest of the employee in so speaking must be balanced against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.[21]

### a. Whether Speech Addressed
### Matter of Public Concern

[15] A threshold question is whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern.[22] According to Carney, the matters of public concern upon which she spoke were opposing wrongful cancellation of services to clients and filing internal grievances with DHHS and claims of discrimination with the NEOC. The district court made no finding on whether such speech addressed a matter of public concern. But the inquiry into the protected status of speech is one of law.[23] As the U.S. Supreme Court explained regarding the inquiry into whether speech addresses a matter of public concern:

> If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. . . . If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.[24]

---

[21] *Fraternal Order of Police v. County of Douglas*, 270 Neb. 118, 699 N.W.2d 820 (2005).

[22] See *Rankin v. McPherson*, 483 U.S. 378, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987).

[23] *Fraternal Order of Police v. County of Douglas, supra* note 21.

[24] *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).

[16-19] The content, form, and context of a given statement must be considered in determining whether an employee's speech addresses a matter of public concern.[25] To fall within the realm of public concern, an employee's speech must relate to a matter of political, social, or other concern to the community.[26] The public concern test functions to prevent every employee's grievance from becoming a constitutional case and to protect a public employee's right as a citizen to speak on issues of concern to the community.[27] When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.[28]

### i. Opposing Cancellation of Services to Clients

[20,21] Carney's complaints about the cancellation of services to clients were made to Miller and were not aired in a public forum. First Amendment protection is not lost when a public employee communicates privately with his or her employer rather than choosing to spread his or her views before the public.[29] While a public employee does not give up his or her right to free speech simply because the employee's speech is private, the internal nature of the speech is a factor to be considered.[30] But the matter upon which Carney spoke was of interest to the community at large and not relevant only to Carney's fellow employees. And by speaking out on behalf of clients, it is clear that Carney's statements did not concern a matter of interest to her alone. We conclude that Carney was speaking more as a concerned public citizen than as an

---

[25] *Fraternal Order of Police v. County of Douglas, supra* note 21.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] See *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979).

[30] See *Sparr v. Ward, supra* note 2.

employee and, thus, that her speech regarding the allegedly wrongful cancellation of services to clients touched upon matters of public concern.

### ii. Grievances and NEOC Claims

[22,23] Carney claimed that her internal grievances and her claims filed with the NEOC were matters of public concern. A public employee's speech on matters of purely personal interest or internal office affairs does not constitute a matter of public concern and is not entitled to constitutional protection.[31] The U.S. Supreme Court has stated:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.[32]

"The fundamental question is whether the employee is seeking to vindicate personal interests or bring to light a matter of political, social, or other concern to the community."[33] Carney's internal grievances and NEOC complaints cannot be fairly considered as relating to any matter of political, social, or other concern to the community. Her purpose in speaking was directed to her self-interest rather than to the public interest. Because we conclude this speech did not touch on a matter of public concern, Carney has no First Amendment cause of action based on her employer's reaction to the speech.[34]

### b. Balancing of Interests

[24] Because we determined that Carney's speech on the cancellation of services to clients was a matter of public concern, we proceed to balance her employer's interest in

---

[31] *Cahill v. O'Donnell*, 75 F. Supp. 2d 264 (S.D.N.Y. 1999).

[32] *Connick v. Myers*, 461 U.S. 138, 147, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).

[33] *Cahill v. O'Donnell, supra* note 31, 75 F. Supp. 2d at 272.

[34] See *Garcetti v. Ceballos, supra* note 24.

"promoting the efficiency of the public services it performs through its employees."[35] Factors relevant in determining whether an employee's speech undermines the effective functioning of the public employer's enterprise are whether the speech creates disharmony in the workplace, impedes the speaker's ability to perform his or her duties, or impairs working relationships with other employees.[36] It appears that Miller did not present any specific evidence to demonstrate that Carney's speech adversely affected the efficiency of the Every Woman Matters program and substantially disrupted the work environment.

### (ii) 14th Amendment

[25] We are not entirely clear on the basis for Carney's 14th Amendment claim, and unfortunately, her brief contains no argument concerning an alleged violation of that amendment. Carney does not assert in her complaint that she is a member of a protected class on the basis of her race, color, religion, sex, disability, or national origin. The district court stated in its order that whistleblower status has been recognized as a protected class, but the court made no finding regarding whether Carney was a whistleblower. We observe that the Fifth Circuit has rejected an argument that whistleblowers are a protected class for purposes of 42 U.S.C. § 1985 (2006).[37] And the U.S. Supreme Court has held that a "class of one" equal protection claim is not cognizable in the public employment context.[38] Accordingly, Carney has not alleged a viable violation of her 14th Amendment rights and Miller is entitled to qualified immunity on this claim. We therefore reverse in part the district court's order denying Miller's motion for summary judgment.

---

[35] *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).

[36] See *Kincade v. City of Blue Springs, Mo.*, 64 F.3d 389 (8th Cir. 1995).

[37] See *Bryant v. Military Department of Mississippi*, 597 F.3d 678 (5th Cir. 2010).

[38] See *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

(b) Whether First Amendment Right
Was Clearly Established

[26-28] Because Carney alleged a cognizable First Amendment violation, we must determine whether her free speech rights were clearly established at the time. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he [or she] is doing violates that right.'"[39] A case does not need to be directly on point, but existing precedent must have placed the constitutional question beyond debate.[40] If a reasonable official could have believed his or her conduct was lawful, the official's conduct does not violate clearly established law.[41] It is clearly established that a state may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.[42] In *Kincade v. City of Blue Springs, Mo.*,[43] the appellants argued that they were entitled to qualified immunity because the state of the law was unclear regarding whether a public employee can speak on matters of public concern when the speech is made in the employee's capacity as a public employee. The Eighth Circuit rejected the argument, stating that the case law at the time of the employee's termination made clear that speech touches upon a matter of public concern when it deals with issues of interest to the community. Similarly, we conclude that at the time of Carney's termination of employment, the law was clearly established that a public employee cannot be terminated for speaking about a matter of public concern.

---

[39] *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011).

[40] See *id*.

[41] See *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

[42] *Rankin v. McPherson, supra* note 22.

[43] *Kincade v. City of Blue Springs, Mo., supra* note 36.

### (c) Whether Conduct Was
### Violation of Right

Finally, we reach the last step in the three-part inquiry into whether the collateral order doctrine applies.[44] This step calls for a determination of whether the evidence shows that the particular conduct alleged was a violation of the right at stake.[45] And, as we noted earlier, this inquiry could require factual determinations to the extent that evidence is in conflict.[46]

[29,30] The district court found, and we agree, that genuine issues of fact exist. The U.S. Supreme Court has held that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."[47] Here, the district court noted the existence of numerous material factual disputes. "'[A] district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact.'"[48] The district court's denial of Miller's motion did not turn on a purely legal question. Instead, the court's order determined that several material issues of fact existed, including whether Miller's conduct was reasonable. Such an order is not immediately appealable.[49] Accordingly, as to Carney's First Amendment claim, we dismiss the appeal for lack of jurisdiction.

### VI. CONCLUSION

We conclude that Carney did not allege a viable violation of her 14th Amendment rights and that Miller is entitled to qualified immunity on that claim. We therefore reverse in part

---

[44] See *Williams v. Baird*, *supra* note 10.

[45] See *id*.

[46] See *id*.

[47] *Johnson v. Jones*, 515 U.S. 304, 319-20, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995).

[48] *Williams v. Baird, supra* note 10, 273 Neb. at 985, 735 N.W.2d at 391, quoting *Stella v. Kelley*, 63 F.3d 71 (1st Cir. 1995).

[49] See *Johnson v. Jones, supra* note 47.

the district court's order denying Miller's motion for summary judgment. We conclude that Carney alleged a cognizable First Amendment violation and that the right was clearly established. However, we conclude that the district court's order denying Miller's motion for summary judgment on that issue is not immediately reviewable under the collateral order doctrine, because the matter presents factual issues and not a purely abstract issue of law.

REVERSED IN PART, AND IN PART DISMISSED.

---

JOEL DELEON, APPELLEE, V. REINKE MANUFACTURING
COMPANY, APPELLANT.
___ N.W.2d ___

Filed February 14, 2014.    No. S-13-015.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.
2. ____: ____. The findings of fact made by a workers' compensation trial judge will not be disturbed on appeal unless clearly wrong.
3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
4. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not interpret the meaning of statutory words which are plain, direct, and unambiguous.
5. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), an order is final for purposes of appeal if it affects a substantial right and (1) determines the action and prevents a judgment, (2) is made during a special proceeding, or (3) is made on summary application in an action after judgment is rendered.
6. **Workers' Compensation: Appeal and Error.** Workers' compensation proceedings are special proceedings for purposes of appellate review.

Appeal from the Workers' Compensation Court: JOHN R. HOFFERT, Judge. Affirmed in part, and in part dismissed.